NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

JANE HOFKER, PETITIONER, v. CROCKER-WHEELER ELEC-
TRIC MANUFACTURING COMPANY AND AMERICAN
MUTUAL LIABILITY INSURANCE COMPANY, RESPOND-
ENTS.

Decided May 14, 1940.

For the petitioner, *William A. Davenport.*

For the respondent, *James J. Carroll.*

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Petitioner's decedent, George H. Hofker, was employed by
the respondent Crocker-Wheeler Electric Manufacturing Com-
pany for a period of years and at the time of the alleged acci-
dent was earning, as a piece worker, an average of $22.99 per
week, which, should compensation be allowed, would entitle
petitioner to a $10 compensation rate.

Petitioner's decedent at the time of the alleged accident
was seventy-four years of age and was suffering from myo-
carditis, arterio-sclerosis and myxo-sarcoma (cancer of the
lung).

Petitioner's decedent had discontinued his employment with
the respondent about October of 1938 and was under active
treatment for the lung cancer up to December of 1938, at
which time, he was re-engaged by the respondent at the same
work he had accomplished before he ceased work and from the

testimony it appears he worked, without interruption, from the week ending with pay day, December 24th, 1938, down to and including the date of the accident alleged, March 17th, 1939. * * *

It appears from the testimony before me that on March 17th, 1939, after working hours, and while petitioner's decedent was leaving building No. 27 on the premises of the respondent, he caught his heels on the stairs leading to the sidewalk and fell on his face and head sustaining injuries. Edward C. Jones, secretary of the respondent corporation, witnessed the occurrence above referred to and assisted petitioner's decedent to his feet. He noted that the injured man was in a dazed condition; bleeding from a laceration over his right eye and appeared to be shaken up. This witness assisted petitioner's decedent to Michael Scalon, the nurse in charge of the plant infirmary, and petitioner's decedent was given first aid by the nurse, who, when produced as a witness for the petitioner, testified that petitioner's decedent gave him a history of catching his heels on the stairs and falling on his face and head. He further testified to the injuries he found petitioner's decedent to be suffering from, namely, severe ragged laceration of the right eye with profuse bleeding, hematoma of the right eye and abrasions of the nose.

* * * * * * *

From the facts thus far established by petitioner and undisputed by respondent, I find as a fact that petitioner's decedent did, on March 17th, 1939, suffer an accident which arose out of and in the course of his employment with respondent and that respondent had due, legal and timely notice thereof. I, therefore, pass to the second question presented, namely, was petitioner's decedent's death hastened by the trauma of March 17th, 1939; was the trauma a contributing cause to his death; was his already weakened condition affected by the trauma sufficient to culminate in a premature and untimely death?

The petitioner produced Drs. C. MacArthur, S. Wolfe Emmer and Irving Applebaum in support of her contention. These physicians testified that in their opinion the injuries sustained by petitioner's decedent were sufficient, when superimposed upon the conditions previously mentioned, to put the

petitioner's decedent to bed and to contribute to his death. It must also be kept in mind that prior to the accident, regardless of his infirmities, petitioner's decedent had followed his usual occupation apparently unimpaired by his afflictions but following the occurrence, he was confined to bed until his death on April 14th, 1939. Dr. MacArthur testified that at no time following the accident did petitioner's decedent improve but on the contrary, regardless of the fact that the laceration and abrasions healed, petitioner's decedent continued to become progressively worse until the date of his death. From the testimony of the petitioner's doctors, it would appear that petitioner's decedent maintained a balance between his ill health and his ability to follow gainful occupation up to the happening of this accident and from that point on, he was totally disabled; confined to bed and declined in health until his death some four weeks after the accident.

The petitioner herself testified that prior to the accident of March 17th, 1939, the petitioner had attended to his household chores and in fact on the morning of the occurrence had removed ashes and garbage and had taken care of the furnace before leaving for his place of employment. She further testified that when the petitioner's decedent was brought to his home by the witness, William Thomsen, that he appeared to be dazed and shaky and had the palor of death. It was necessary for her, assisted by her daughter, to practically carry the petitioner's decedent to his bed and that throughout the night, he still remained in a dazed condition. She further testified that the petitioner's decedent's nose was deviated following the accident and was extremely tender to touch even up to the date of his death. This fact was also brought out in the testimony of Dr. MacArthur.

The respondents produced Drs. Saul K. Gluckman, Charles F. Baker, Richard H. Dieffenbach and Otto Lowy in support of its contention that petitioner's decedent's death was in no way related to the trauma of March 17th, 1939, but was of causes independent thereof, which causes were in no way related to trauma or aggravated or accelerated thereby. Dr. Saul K. Gluckman testified that he treated the petitioner's decedent on one occasion only, that is, he rendered the first

treatment which consisted of six stitches being taken in the ragged laceration over the right orbit. He stated that the history was obtained from the petitioner's decedent, that he had slipped and fallen but the history was unreliable because of the dazed condition of petitioner's decedent. The doctor felt that the petitioner's decedent's condition was serious from the underlying condition and not from the trauma itself, although he testified that the trauma was in itself severe enough to put the petitioner to bed for at least several days.

Dr. Charles F. Baker testified to X-ray findings and treatment given petitioner's decedent prior to the trauma and stated that in his opinion petitioner's decedent had a cancer of the lung which the doctor treated by X-ray and which diminished in size under X-ray treatment; that it was a fatal disease and could only be arrested temporarily; that its natural progress would eventually result in death. Dr. Baker's testimony showed that some improvement was registered by the petitioner's decedent under treatment.

Dr. Richard H. Dieffenbach testified to several examinations made of the petitioner's decedent prior to the date of his death. He did not see him after the accident of March 17th, 1939. The doctor established the fact that petitioner's decedent was suffering from a cancer of the lung prior to the date of the accident; that the disease would ultimately prove fatal; that in his opinion the cancer was not caused, aggravated or the trauma a contributing cause to petitioner's decedent's death. On cross-examination, however, Dr. Dieffenbach in answer to a hypothesis stated by the examiner testified that trauma superimposed upon the petitioner's weakened condition was a probable contributing cause of petitioner's decedent's death.

Dr. Otto Lowy testified on a hypothetical question propounded by the respondent that in his opinion the cancer from which petitioner's decedent was suffering was not caused, aggravated or that the trauma of March 17th, 1939, in any way contributed to petitioner's decedent's death. Not one of the medical experts could estimate with certainty or approximate the date upon which petitioner's decedent would ultimately die from the underlying conditions independent of trauma.

After carefully considering all of the testimony, I find that petitioner has sustained the burden of the medical proof in support of the contention that petitioner's decedent's death was accelerated and hastened by the trauma received in the accident of March 17th, 1939; that the trauma, superimposed upon the already weakened condition of petitioner's decedent was sufficient in its result to be a contributing factor in causing a premature and untimely death.

\*  \*  \*  \*  \*  \*  \*

JOHN C. WEGNER,
*Deputy Commissioner.*